UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
UNITED STATES OF AMERICA,

    -against-

                                            OPINION

MENDEL ZILBERBERG,                    19 Cr. 802 (GBD)

               Defendant.
------------------------------------x

GEORGE B. DANIELS, United States District Judge:

On July 11, 2023, a jury convicted Defendant Mendel Zilberberg of conspiracy to commit bank fraud in violation of 18 U.S.C. §§ 1349 and 3293 (Count One); bank fraud in violation of 18 U.S.C. §§ 1344, 3293, and 2 (Count Two); conspiracy to make false statements to a bank in violation of 18 U.S.C. §§ 371 and 3293 (Count Three); making false statements to a bank in violation of 18 U.S.C. §§ 1014, 3293, and 2 (Count Four); and embezzlement and misappropriation of bank funds in violation of 18 U.S.C. §§ 656, 3293, and 2 (Count 6).[1] Before this Court is Defendant's motion under Federal Rule of Criminal Procedure 29(c) for a judgment of acquittal. The defendant made the motion orally at trial and elected to rely on the record instead of making written submissions. (*See* Tr.[2] 653:17-19; Letter, ECF No. 134.) Defendant's motion is DENIED.

I. **EVIDENCE AT TRIAL**

According to the evidence at trial, the defendant conspired with three individuals to defraud Park Avenue Bank. (*See* Tr. 159:15-160:5.) The defendant is an attorney and was a director at Park Avenue Bank, a bank insured by the Federal Deposit Insurance Company. (*See* Tr. 17:1; 128:23-129:1; 397:24-398:6; 127:4-6.) In order to secure a $1.4 million loan from the bank, the defendant and

---

[1] Count 6 was referred to as Count 5 at trial because it was the fifth count against Defendant Zilberberg.
[2] "Tr." designates a reference to the consecutively paginated trial transcripts at ECF Nos. 124, 126, 128, 130, and 132.

his coconspirators used a sham borrower and lied about the purpose of the loan and the sham borrower's finances. (*See* Tr. 730:22-731:23.)

In 2009, Abraham Kahan, Aron Fried, and the defendant agreed to apply for the $1.4 million loan using a false borrower, Herschel Sauber. (*See* Tr. 157:20-21; 159:15-160:5.) The loan application stated that Mr. Sauber would use the loan for his business operations, but instead Mr. Kahan, Mr. Fried, and the defendant split the proceeds, with the defendant receiving $506,000 through his business, One World United. (*See* Tr. 44:21-45:2; 181:5-9; 604:17-20.) In addition to stating a false borrower and purpose for the loan, the loan application inflated Mr. Sauber's finances and falsely stated that Mr. Sauber was the defendant's client, advantaging Mr. Sauber in the review process because an existing relationship with the bank made a borrower more desirable. (*See* Tr. 37:1-39:23; 46:17-47:16; 408:14-410:4; 48:4-49:8; 433:6-21.)

The evidence also showed that the defendant encouraged his coconspirators to apply for a loan of $1.4 million because loans under $1.5 million had a less rigorous review process. (Tr. 171:7-172:1; 393:9-394:1; 737:12-738:7.) The defendant also referred the loan to the bank, providing further advantage to the application because loans referred by a director received more immediate attention and were reviewed more quickly. (*See* Tr. 398:15-399:6; 402:11-13; 427:6-16.) Throughout the loan review process, the defendant repeatedly checked in on the application with bank employees and pushed it through to approval. (*See* Tr. 411:21-413:20; 415:25-416:3; 427:15-18; 428:17-19; 445:12-446:2.) In preparation for the distribution of the loan, the defendant and his coconspirators executed heter iska forms, documents memorializing loan relationships under Jewish law, which confirmed that the loan proceeds would be split among Mr. Kahan, Mr. Fried, and the defendant. (*See* Tr. 51:16-52:8; 175:15-23; 176:24-177:9; 378:2-11; 380:9-18.) After the loan was approved, $506,000 was transferred

first to Mr. Fried's account and ultimately to the defendant's business bank account for One World United. (*See* Tr. 599:23-600:17; 602:19-606:9.)

## II. JURY DELIBERATIONS

The defense primarily attempted to attack the credibility of Abraham Kahan as a government witness. Shortly after deliberations began in this case, the jury sent a note requesting the testimony of Mr. Kahan, as a cooperating witness at trial, where he spoke "to the point of expecting or hoping for probation." (Tr. 879:2-5.) The Court directed the court reporter to read the requested testimony to the jury. In a second note, the jury asked, "can we get clarification on the definition of making false statements, jury charge no. 4. [F]or instance, is it literal? Must he have made a statement? Or is it simply that he should have been responsible to tell the bank if he knew of false statements being made to the bank?" (Tr. 886:3-9.) The Court clarified the instructions as to Count Four and stated, "It is sufficient to satisfy this element if the government proves that the defendant caused the statement to be made by a third party, and if the statement was untrue when made." (Tr. 887:4-7.) In a third note, the jury asked, "can we review the legal instructions for Count 5?" (Tr. 893:3-5.) With the parties' further consent, the Court restated the elements of Count 5. (Tr. 893:6-895:19.)

After an hour and a half of deliberation, the jury returned a verdict of guilty on all counts. (Tr. 897:10-898:3.)

## III. RULE 29 MOTION

A trial court must be "careful to avoid usurping the role of the jury when confronted with a motion for acquittal." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003). "[T]he court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999) (citation and internal quotation marks omitted).

3

In considering the Rule 29 motion, the court reviews the sufficiency of the evidence "in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government." *United States v. Walker*, 191 F.3d 326, 333 (2d Cir. 1999) (quotation omitted), *cert. denied sub nom. Walker v. United States*, 529 U.S. 1080 (2000). The evidence is to be viewed "not in isolation but in conjunction," *United States v. Matthews*, 20 F.3d 538, 548 (2d Cir. 1994), and the "government's case need not exclude every possible hypothesis of innocence." *United States v. Martinez*, 54 F.3d 1040, 1042–43 (2d Cir. 1995) (citation and internal quotation marks omitted), *cert. denied sub nom. Martinez v. United States*, 516 U.S. 1001 (1995). The jury's verdict must be sustained if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Guadagna*, 183 F.3d at 130 (quoting *United States v. Resto*, 824 F.2d 210, 212 (2d Cir. 1987)).

The defense made the Rule 29 motion orally at trial with no written submissions, and has provided no further argument in support of the motion. The evidence at trial sufficiently supported each essential element of the crimes charged such that a rational trier of fact could find the defendant guilty beyond a reasonable doubt. The jury received clear instructions as to the proper considerations for each charge and returned a guilty verdict quickly after deliberation began.

## IV. **CONCLUSION**

The defendant's Rule 29 motion for a judgment of acquittal is DENIED.

Dated: New York, New York
October 19, 2023

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge